Madam Clerk, please call the first case in the morning. 3091019 Aventine Renewable Energy v. JP Morgan Securities Mr. Corbat, you may proceed. The appellant here, Aventine, is a Pekin-based manufacturer of ethanol and related products. It has a claim for well in excess of $31 million against JP Morgan based on JP Morgan's reneging on an agreement to repurchase securities. That claim has been stuck in the mud for more than a year and a half now because of the stay that is under review before this Court, and a stay that was entered in favor of a New York class action that has been pending now for more than two years as we are here today, and that is still, and indeed once again, back at square one with no prospect of progress in the foreseeable future. This case is a contract case. This is not a case of financial industry regulatory policy. It's not a case of figuring out where a matter should be tried or litigated or arbitrated. There is a contract between these parties whose language governs their relationship, and arbitration is itself a matter of contract, not of broader societal policy. The Jameson case that we cite in our papers is perfectly clear that particularly in a commercial matter, the language of the contract unenlarged by construction or implication is what governs. That is also the rule in a long line of United States Supreme Court cases dating back decades. We cite the Waffle House case as one example where the United States Supreme Court explicitly stressed that it's the language of the contract, not policy goals, that governs whether a particular case or particular matter is to be arbitrated. And even since the briefings have been filed in this case, the United States Supreme Court has continued on that same trend. There have been two cases as recently as yesterday where the United States Supreme Court has continued this long line of cases saying that the language of a contract, not broader goals, is what governs. The Stolt-Nielsen case in April, the United States Supreme Court said that a rule of fundamental importance is that the basic precept is that arbitration is a matter of consent, not coercion. Let me ask you, I'm sorry to interrupt you, but let me ask you this. What's arbitration really got to do with anything here? Because the judge didn't say, I'm staying the case. It's not like a state for arbitration. He just said, I'm just staying this case until it's done out. So is arbitration really got anything to do with this stay? Your Honor, it is exactly correct that a compelling of arbitration is not before this court. The Circuit Court denied a motion to compel arbitration, and that was not appealed. The only relevance of arbitration is that the Circuit Court was explicit in that one of the rights under the contract not to arbitrate and to proceed in arbitration. The Circuit Court said that on the record, and that plainly the effect of the arbitration clause is what has caused the Circuit Court not to proceed with this case. So the fact is that there is no ability to arbitrate now. There's a provision of the contract that says there are three conditions that would be necessary in order to arbitrate. Those do not exist today. In fact, we can't, Edmonton can't opt out of the class action today. So the Circuit Court agreed to that, and this case is not referable to arbitration. So there is no stay, for example, under the Federal Arbitration Act. One of the things that J.P. Morgan has argued is that a stay might have been appropriate under the Federal Arbitration Act. This case is not referable to arbitration, and so that is not the basis of the stay. So the only basis that the Circuit Court can rely on for the stay is its general inherent power to manage its docket. The problem with managing its docket and the inherent power is that that does not permit a stay of indefinite duration. That's fine if you try and figure out which case is going to proceed in what order. Staying a case from March until April for the convenience of the parties or witnesses or something like that would certainly be within the inherent power of the court. J.P. Morgan cites a case where an action is stayed for a mediation to proceed. That sort of thing is within the inherent power of the court. This is an entirely different circumstance. In this circumstance, the stay is going to last indefinitely, and the law is clear, and the Zurich line case is in Illinois, and going back to the Landis case in the United States Supreme Court from 1936, that indefinite stays, where it's going to last for years and you don't even know what circumstances might end it, that indefinite stays are inappropriate and indeed an abuse of discretion. And that's what Landis said, and that's what Zurich has held. And here we are talking precisely about a stay of indefinite duration, because as we have shown below, and continues to be the case, the New York class action in which this case was stayed in favor of the New York class action has been pending now since May 2008. The CIPLA case was originally the CIPLA case pending before Judge Berman that was filed in May 2008. By the time the circuit court held its hearing in this case in May 2009, there had been no motion to dismiss file. The circuit court ruled that discovery would proceed more efficiently on a national basis in the class action, but as we showed when we filed a motion to lift the stay that brings us here today, that no such discovery will take place for years because of federal law that requires that a motion to dismiss and then a motion for class certification be determined before general discovery proceeds. And none of that has happened. None of that will happen for an extended period of time. By November of last year, when the circuit court held its hearing on the motion to lift the stay, there was no motion to dismiss. The procedural wrangling there had gone on regarding who was going to be the proper plaintiff, who was going to be the proper counsel, all the sorts of wrangling that happens in federal securities class actions. J.P. Morgan pointed out in its briefs earlier this year that a motion to dismiss was finally to be filed in March of this year. And in fact, it was filed. It was then promptly removed from the docket and dismissed without prejudice because the couple of weeks ago was assigned to yet another new judge in New York. So once again, we have no motion to dismiss, no schedule for a motion to dismiss, and yet another new judge. So the New York class action is going nowhere. J.P. Morgan has never questioned the fact that motions to dismiss and class certification motions in complex securities class actions take years and years to resolve. That is simply a fact. So that the case in New York will not proceed, discovery will not even begin for the foreseeable future. And so we're stuck waiting for that indefinite event to occur. And meanwhile, we are left without the ability to proceed, without discovery, without access to the witnesses. One of the things that we have pointed out consistently, we pointed out in the circuit court, we pointed out in our briefs here, is that this is not simply a document-based case. The contract that is at the heart of our action is an oral contract. Conversations among the J.P. Morgan representatives in their Chicago office and the Abitibi representatives in the Pekin office are at the core of the case. And so when J.P. Morgan says, oh, we can preserve documents, that's nice, but it doesn't get at the core issue. And they cite cases that say, oh, the showing that you have made is not specific enough to lift a discovery stay. But those are not Illinois cases. Those are federal securities cases that actually reinforce the point that the federal discovery stay that we proved up is, in fact, a robust stay and will not easily be lifted. Illinois law is very different from that federal securities law and provides for a liberal discovery whose goal is the ascertainment of truth. And in order to ascertain the truth here, it's important that the case proceed and that we be able to access the witnesses and the materials that would prove our case. The fundamental prejudice, the fundamental prejudice that Abentine is suffering here is a lack of access to an Illinois court, an Illinois forum for its Illinois claim. The connection to Illinois is absolutely plain here. It's a claim under Illinois law. All the counts of our complaint are under Illinois law. The plaintiff, Abentine, is plainly an Illinois plaintiff. The defendant is being sued on conduct that took place in Illinois. The damages, the well in excess of $31 million in damages that were suffered were suffered in Illinois. Abentine's bankruptcy that resulted from the JP Morgan's conduct, that was all caused by these damages that occurred in Illinois. So the test under Staley is whether this action has a legitimate and substantial relation to Illinois. Plainly does. And if an action has a legitimate and substantial relation to Illinois, then what Staley and its progeny teach is that you don't defer in that circumstance to a foreign court. And that's exactly what the circuit court did here. The circuit court deferred, in fact that's a word that the circuit court used, deferred to the New York action because it was in the interest of courts everywhere was what the circuit court said. But that is precisely not what a court is to do under Staley because the Illinois connections of this case are such that an Illinois law action by an Illinois plaintiff should be permitted to proceed without deference to a foreign proceeding. The courts are perfectly clear that multiple actions, an action in some foreign proceeding and an action in Illinois are perfectly legitimate. Let me ask, is there anything significantly different about Illinois law versus federal securities law that would allow you to argue that, well, whatever happens in that class action out in New York really is not going to have any bearing on what's going to happen in this case? The answer, Your Honor, is that there are similarities and differences in the law. The federal class action is, of course, based on federal securities law. And that is based on representations that were made. Our actions here are Illinois breach of contract, fraud, Illinois consumer fraud, promissory stoppage, negligent misrepresentation, and fiduciary duty, all under Illinois law. There are obviously overlapping pockets. And, in fact, I think the overlapping areas are why the circuit court concluded that this action was encompassed within the class action, that as a transactional test, the class action applied to this case. So I can't say that they are distinct. But, obviously, our action is based on Illinois law. What we have to prove up are the elements under Illinois law for each of those causes of action. And what we need to prove are those elements. Now, it is also true that the discovery that we will see will be useful to J.P. Morgan and to other parties in the federal class action later. So I think the circuit court's efficiency point is not correct. But there are also plainly unique aspects of Illinois law that we will have to establish and that we are prejudiced by not being able to establish as we sit and wait under these circuit courts. How do you distinguish thin? Thin, Your Honor, is distinguishable, I think, on two grounds. First, like essentially all of J.P. Morgan's cases, it goes immediately to this purpose. What is the purpose of this arbitration language in the contract? And this is a contract between two parties, between Aventine and J.P. Morgan. One thing, it's unambiguous. No one's ever argued that it's ambiguous, so you don't even look to parole. But even if you looked to parole evidence, what you certainly don't look to are statements by a third party, like the NASD, in the early 1990s when they were coming up with language. And that's what thin does. That's what the Wilson case that they cite do. All of their cases go to, well, what's the purpose of this language? And that's precisely not what a court is supposed to do in a contract action. You look at the language of the contract, not at what some third party might have thought when it was coming up with regulations for the securities industry. So one of the things that thin is distinguishable for, just like some of the other cases, is that it goes to this purpose behind the language. What is the policy goal that this language is trying to accomplish? And this is not a policy case, Your Honor. This is a contract case. The other distinction for thin is that Judge Swain, the Southern District of New York judge who decided that case, was deferring in favor of a client's action pending before herself. So she could govern her own docket. She knew what was going on, and she knew that it was not going to be unduly delayed. And that's simply not the circumstance in either the King case that we cite, where the court specifically concludes that there is no provision for what happens in the contract itself. There is no provision for what happens that requires a stay during a period when a party can't require arbitration. And in the Pecan East case. Counsel, that's two minutes. And in the Pecan East case and the Blythe case and the RA Investments case, all of those cases said we look at the same language. And because the stay here is going to be indefinite in length, we find that a stay would be inappropriate when the party seeking arbitration is not able to compel arbitration under the language of the agreement. And that's precisely, I think, the core point here, is that this is an indefinite stay, and the courts that have looked at indefinite stays have found them to be inappropriate. None of the cases that J.P. Morgan cited had indefinite stays. In fact, we cited, and I think it's put on page 11 of our reply, we go through them one by one and note how much shorter the stays were to be in those cases, unlike Pecan East and Blythe and RA Investments, where courts rejected indefinite stays. All Aventino is seeking here, Your Honor, is an opportunity to prove its case. Let the process get started. Let it seek discovery. Let's get through the pleading stage. Let us move forward. And that's a basic right under Staley. There is no reason to deny it. And that's why we ask, Your Honor, to allow this action to proceed. Thank you, counsel. Thank you. Mr. Berberian, you may respond. Thank you very much, Your Honor. May it please the Court, Nicholas Berberian on behalf of the appellees, J.P. Morgan, J.P. Morgan Securities. Aventine is a publicly traded company. It signed an arbitration agreement when it opened its account. That arbitration agreement is at the heart of this controversy. There is no issue that Aventine agrees to arbitrate all of its disputes with J.P. Morgan Chase arising out of its accounts and transactions in that account. There is no dispute about it. Well, wait a minute. What if the contract was induced by fraud? There is no allegation that the contract was induced by fraud. That is not in the complaint. It has been nowhere alleged, nor is there evidence, any evidence to support that. This auction rate market that failed, failed as part of the credit crisis, the contract that occurred in 2008. The contract was signed in 2006. The contract has nothing to do with what occurred in 2008. But more importantly, there is no allegation, Your Honor, that the contract was induced by fraud. The arbitration agreement applies. The issue, which numerous courts, including Finn, have addressed, is that it contains a provision, which is mandated by SEC-approved rules, that you cannot compel arbitration when someone, until someone opts out of a class or elects not to participate in that class. And the goal of that, it's until. The goal of that is that the SEC recognize that class actions are to be encouraged, and that if someone that has signed an arbitration agreement brings a class action, they shouldn't be compelled into arbitration. So the fundamental framework of the contract is that you have agreed to arbitrate your disputes. There's no question that that is the case. If you're going to bring an individual claim, you must do so in arbitration or remain a member of the class. They are not stuck in the mud. They could have just filed their arbitration claim when they filed their complaint, and it would have been resolved by now. It would be resolved by a FINRA-appointed arbitration, which is governed by the SEC, by a panel here in Illinois applying all the standards of the law that are applicable. That is what they agreed to. That is what the contract provides. And what they are seeking to do here is to say, wait a second, the opt-out period hasn't come yet in the class, so we don't have to decide yet. And we want to race into court and race through a judicial proceeding up until then in order to beat the time when you can compel us into arbitration. That's what they're seeking to do. And the courts, including the FIN Court, have addressed that. We've addressed – we've set forth eight cases across the country that have addressed this issue, all of which have applied stays. Their cases that applied and have found that a stay may not be appropriate all arise out of one class action. Every single one of their cases, as we pointed out in our brief, arise out of the Denny class action, where in the Denny class action, what happened was there was an issue about whether the arbitration agreements were fraudulent to begin with. And that went up on appeal. It went up on appeal and the entire action was stayed. And when it came back on appeal, what was decided was that there had to be additional findings as to whether or not signatories were bound by those arbitration agreements. And as we go through their cases, each and every one of their cases under that unique set of circumstances found that a stay wasn't appropriate. But look at the Illinois cases. Federal courts in Illinois, that's correct. But this arbitration agreement by its very terms says it is governed by the Federal Arbitration Act. And because it involves interstate commerce, it is governed by the Federal Arbitration Act. And as we cite in Moses' column, the Supreme Court has said that the Federal Arbitration Act applies even to state courts in matters involving interstate contracts. Here, the Olson case, Judge Castile in the Northern District of Illinois applying this, says, look, the right to arbitration, this fundamental agreement to arbitrate would be effectively nullified. Nullified if you allowed a person that signs an agreement to proceed in court up until the time that they're required to elect whether they're going to proceed in the class action or not. They can proceed in arbitration at any time. And it went on and it talked about Section 3 of the Federal Arbitration Act, which applies, and says that this is – the Federal Arbitration Act Section 3 says any matter that's referable to arbitration should be stayed. And that the Moses Cohen Supreme Court says any doubts concerning arbitration, not just with respect to the scope of the arbitration clause and what's governed by it, which is what their cases talk about, but additional matters such as waiver, delay, and like defenses should be broadly construed because the purpose is to encourage arbitration. This is what the Supreme Court has held in strong public policy. So we should stay this proceeding, stay the proceeding here, which this Court – and this is under an abusive discretion standard. The Court did what many courts have done throughout the proceedings and said, look, Appentine, until you decide whether you're going to stay in the class or file an arbitration proceeding, I'm not going to allow you to effectively nullify, which is what the Olson Court decided, that contractual obligation to arbitrate by proceeding in court. The Wilson case, Judge Edelman, said you can't have it both ways. You can't have agreed to arbitrate and stay in a class and then point to that class action and say, well, I haven't decided yet, and so I'm going to proceed and continue on and try to proceed in court. Says you can't do that. The Finn case, which they were asked to distinguish, Judge Swain did not utilize the fact that both cases were before her as a distinguishing factor. Judge Swain went through a five-point analysis, and again, this was argued to the trial court below, and we're here under an abusive discretion standard. And those five points are critical. The first point was she said, let's look at what the rights of the plaintiff are. And she said, like all these other courts that we've cited, there's no contractual right in that contract to proceed in court until you decide whether you're going to be a member of that class or not. That's nowhere to be found in the rule, in the contract. The contract says you can't be compelled into arbitration until such time, but it doesn't say that the flip side of that is true and that you have the right to proceed. So, again, contractual interpretation and not finding and focusing on the use of the word until. She then looked at the second problem. She says, what's the right of the defendant? And she said the right of the defendant is they signed an arbitration clause. There is an agreement here to arbitrate, and that would be effectively nullified if you allowed this and run. She said, three, what are the interests of the courts? Why should there be a duplicate? There is the Supreme Court of the United States that says arbitration is important. It provides a means of dispute resolution. It eases burdens on courts. And yet, if this were the rule, you'd have parallel proceedings in more than one court. She said, what are the interests of others? And she looked at the class actions, and she said, if this were the rule, if this were the rule and you allowed this to be the law, class actions would be discouraged because members of the class, if they could seize upon this interpretation that they're urging upon you, could all run out and file actions all over the place. And there would be a multiplicity of actions as opposed to a consolidation of actions, which is what class actions are all about. And the fifth and final factor she looked at was public interest. And she returned to the Supreme Court's notion of there is a strong federal policy in favor of arbitration, and if you were to allow this ad run, which is attempted to be effectuated here, you would be negating that policy. So Finn, and happens to be an ultra-rare case, happens to be the same product at issue here, under almost identical circumstances, together with all of these other cases, including the two cases in New York. The Ingstad case as well, who we cited, said this would be like a get-out-of-arbitration-free card. You can't allow this to happen. And the Crump case, it says this defendant would be irreparably harmed by circulating and undercutting the arbitration clause. Those cases, which we cited, stand in stark contrast to Aventine's cases, which, again, all arise out of the Denny class action. They all were all but one was brought while the Denny class action was up on appeal and stayed as a result of this arbitration provision. The Blythe case pointed out that there was, in fact, a question as to whether there was any valid agreement to arbitrate. The one case that came down that was decided after the case was no longer stayed as P. Canese, and that court specifically recognized that there was a significant question that still existed whether the arbitration agreements were enforceable. There's no such question in this case, Your Honor. The arbitration agreement here is enforceable. It hasn't been judged. All right, but what does whether that arbitration agreement is enforceable have to do with this appeal? What it has to do with, Your Honor, is they're suggesting to you, and this is the Landis and A. Stanley cases, those cases don't apply because, and it answers that question, those are cases where there's an intent, and Landis is a perfect example, which they don't cite it, for example, until they reply to me for the very first time. Landis is a situation dealt with by the Supreme Court where the government is challenging, the enforceability of a piece of legislation is being challenged. The government brings a test case to enforce that legislation. Another jurisdiction, public utilities that are subject to that regulation, they sued the government to try to enforce their interpretation of that provision. The government seeks to stay all of those other actions up and through appeal of their own case. And the Supreme Court said, wait a second, this is pretty dramatic because these cases are strangers. The people in this case, the people in the case that the government wants to stay, have nothing to do with the case that the government is bringing. They are totally different parties, and why should you entrust your right to a decision on the merits, a decision on the merits to another court? Very different than what's occurring here, Your Honor, to answer your question. The court below didn't say, you've got to wait until New York to decide what your fate is on your claim by the time, that's not what they decided at all. This is a limited stay that is limited up until the time that the class certification issue is decided, not the merits of the New York case. So, in other words, this stay only lasts for the following period. One, Attentine is free at any time, including today, or including any time up to today, to just file the arbitration that it agreed to do. Or, it is stayed up until the time that the court says that you must decide whether you're going to be in this class or you're going to be out of the class, the opt-out period, or if the class has to be certified for any reason. But there won't come a point in time long before the merits of the class action are decided when the class member has to decide whether they're in the class or out of the class. So, I mean, so far it sounds like the answer to my question is no. Well, yes it does, Your Honor, because the very next step is what happens. The very next step. At that moment where they have to decide, and that's where the stay goes up until. If they decide to stay part of the New York class action, then they go forward in the New York class action. They cannot go forward in Illinois. If they decide they don't want to be a member of the New York class action, they must arbitrate their claim. And that's undisputed. Once they opt out of the New York class action, they must arbitrate. So that is why it has everything to do with it, Your Honor, because this is not a situation like Landis or like Staley where you're leaving another court to decide your merits of your claim. This is a very limited stay up until the point in time where you're going to decide whether, where it's decided whether Abentei is going to have the resolution of the merits of its claims in the New York class action, or if it doesn't stay as a member of that New York class action and we're going to have its claims resolved there, then it must proceed into arbitration because it's opted out. So that's why the arbitration claim, Your Honor, is critical to this, because what they've suggested to you by suggesting it by citing Landis and A.E. Staley is that this is a situation where a New York court is going to decide their claim. If a New York court is going to decide their claim, then they will have had to, have decided that they're going to stay in that New York class action because there will be an opt-out time long before the merits are decided. Counsel has two minutes. Thank you, Your Honor. And when that occurs, again, there's only one of two results. They stay in the New York class action, in which case they can't proceed in Illinois because they're a member of that class, or, therefore, they say we're opting out, and when they opt out, then they have to proceed in arbitration because that is how the arbitration agreement reads. And what happened, Your Honor, and this is so critical with respect to when this, this was decided by the district court, not by the trial court, not once but not twice. They went back and they tried to get the stay lifted again after it was initially entered. And what they argued in their papers, we argued, only demonstrated to the court that it was, that their decision, the trial court's decision was not only based on common sense, but it was based upon sound law and now based upon what they said. In their papers, they said, quote, the O'Gara class action, quote, provides little hope of real redress for Abentine's substantial claims against J.P. Morgan, close quote. And later they said that class action provides, quote, little prospect that a case whose focus is broad enough to include all investors in J.P. Morgan or auction rates will adequately address Abentine's larger claim. Those statements clearly signal, clearly signal that when that opt out decision has to be made, they're going to opt out of the New York class action. Common sense tells us all of that. There are large claimants. Large claimants don't usually participate in class action to decide their claim. And they've so said. So it's become very clear that when that opt out period occurs, they're going to opt out. And when they opt out, then the contract clearly provides that if they're not going to voluntarily agree to go to arbitration, they can be compelled. And that is why it comes back to that, Your Honor. But we don't have to worry about that now, whether they can be compelled to arbitration. Because that's not what the trial judge did. In fact, he denied your motion to compel arbitration, and there's no cross appeal on that. What the trial court said, wasn't it, was that he based his stay on his inherent power as a circuit judge in this state to control his docket. Yes. And he thought it would be more cost effective for the courts and everybody to watch this New York case, at least for some time. Up until now, Your Honor, we filed a motion to compel on the basis that we believed that it wasn't encompassed because their claim was very different. But in the alternative, if you deem to be encompassed, it should be stayed. And when we went back, the stay issue was argued again. So you're correct in the inherent power that the court recognized. But then it went on and said they can go into arbitration in the meantime, and they can proceed to obtain more immediate relief on their individual claims if they want to at any time. So the arbitration provision and the effect of the arbitration clause is, Your Honor, part and parcel of what is before this court today. But that's no different than the trial judge saying, and you guys can do this, or we can do that, or you can walk out the hall and try to settle this thing. I mean, he didn't force anybody in arbitration. The fact that he discussed it, the plaintiff had that option, and his trial judge is often trying to say things to get people to get along and maybe settle the case. But the bottom line is, his hearings, he seemed to have based his decision, as far as I can tell, on what he said was, I don't think it's cost effective for me to move this case along long. Let's see. I think it'd be better if we would at least see what happens for a while out in New York. And the why, Your Honor, is up until that class action decision needs to be made. He made that very clear at page 72, page 8 of our brief, citing the portion of the transcript, where he made it very clear that he's not waiting for the New York case to decide the merits of the controversy. He's waiting for the New York case to decide this class action issue as to whether or not they need to go forward, whether or not they're going to go forward as a member of the New York class or not. And what's clear and undisputed, Your Honor, and this was at the heart of the court's decision, was the fact that if they decided not to go forward as part of the New York class and opt out, they would be required to go into arbitration. And the court standards are looking at the trial court's decision. Again, eight cases have held the same way. The trial court's decision, as Your Honor is well aware, is based upon an abuse of discretion standard. We believe it's based upon Stalin law. But it is, again, this is the ability to stay and the ability to stay on a procedural basis waiting to see how a procedural aspect of another case is going to turn out in order for you, the trial judge, to decide, well, where is this case going to go? And the irony of it is the one place it's not going to go forward is in that trial court if and once the class action is decided, class action issue is decided. Thank you. Thank you, Mr. Berberi. Mr. Corbat, you may reply. Thank you, Your Honor. Abitin's action here includes six counts, six counts under Illinois law. One of them is a fraud count. One of them is based on the fiduciary duty that J.P. Morgan and J.P. Morgan Securities, both of the defendants, owe to Abitin by virtue of their longstanding banking relationship. So there are a lot of unique Illinois law aspects to this case, and that's a substantial part of the prejudice that we argue. One of the central points in response to J.P. Morgan's argument, though, is that the contract here, the arbitration agreement that's in their form application for an account, that that contract provides no basis for a stay, that that contract cannot justify the stay that the circuit court entered. Now, for one thing, J.P. Morgan has consistently mischaracterized, I think, what the agreement says, because the language that they like to quote, that all topics are subject to arbitration, that immediately goes on to say that they can't compel arbitration in the circumstances in which we find ourselves. And as Your Honor pointed out, the circuit court decided that, and that's not before this court. And so the distinction, the binary choice that J.P. Morgan likes to present, that either we can proceed in the class action or we can proceed in arbitration, and that's our only choice, that's nowhere in the language. That's nowhere in the law. As a result, and it could have been, but it's not. And so there's nothing that deprives Abitin of its preexisting right, to proceed in an Illinois forum unless it agrees to arbitration and J.P. Morgan could compel arbitration. And it can't. Okay, but again, these are issues that we don't have to decide. Exactly. Right now. Would you agree with that? I completely agree, Your Honor. And the point is that when you look at the two sets of cases, the sort of competing sets of cases, our cases say when you can't compel arbitration, then you look at whether or not the party has met the high burden of justifying a stay. Buchanese and Blythe and R.A. all said that they did not. J.P. Morgan made no showing other than the arbitration provision. There's no other evidence of what would justify a stay. The only prejudice that they ever argued is that someday they might get to arbitrate this. But that's going to be, as we showed, in the indefinite future. There is no other basis for the stay. And then those cases go on to say, and if the stay is to be indefinite in duration, then that is a reason not to enter it, because indefinite stays are inappropriate. And, in fact, the court goes on to say, multiple courts that we've cited go on to say, an indefinite stay is an abuse of discretion. And there's nothing that is to the contrary, because there are no cases on the other side that say an indefinite stay is okay. In all of the cases, the Wilson case, it talks about eight cases. But those all go off on the policy issues. Where should cases like this be handled as a matter of societal policy? What's more efficient? And that's exactly inappropriate in a contract action. They talk about effectively nullifying their contract rights, but their contract rights don't apply, as the circuit court decided and is clear now before this court. And so when we look at what's happening in New York, that case is going to go on indefinitely. There's no question but that the opt-out point that the circuit court used as the basis of when it will even reconsider its stay is not going to happen for years and years to come. In the meantime, the New York court is going to be engaged in procedural wrangling that has nothing to do with our Illinois clauses of action. It's not going to achieve any progress, any efficiency. So even the grounds that the circuit court based its order on are incorrect, as we showed below, and really have never been disputed. There is no opportunity for today for us to even opt out of that class action. That proceeding will not resolve Aventine's claims, certainly in the course of which this stay is going on, because they're simply engaged in procedural wrangling. And while that procedural wrangling is going on, the prejudice that we're suffering and not being able to get at our witnesses continues. But why is it you cannot opt out? Your Honor, there's no opportunity to opt out. In a class action, opportunities to opt out occur when class notice is sent, and that would have to happen after a class is defined, which is— We would have to intervene in the action and then declare that we would not be proceeding in the future, and that, frankly, is something that it would be an extraordinarily unusual step to take, something that's simply not done. Opt out is a standard method in the process that takes place far down the road. Your Honor, there are formal procedures, but you cannot formally declare, like, for example, before an arbitrator, for example, that you will proceed and that you will foreclose and waive any and all opportunity to participate in the process. We could waive our rights, Your Honor, and that's exactly what the Circuit Court was asking and pressuring us to do, was to say, you have this contractual right not to proceed in arbitration, but I would really like you to waive it. And that's really what's going on here, is that the Circuit Court and the courts that J.P. Morgan said, they really want the parties to waive their right not to proceed in arbitration. But arbitration is a matter of contract. We contract it for when we will arbitrate and when they can't compel us to arbitrate, and those circumstances do not exist. And it's inappropriate for a court to pressure a party to waive its contractual rights when arbitration is purely a matter of contract, and the contract here does not, indisputably, does not provide for arbitration under the present circumstances. I think it's disputed, isn't it, that you're on? I mean, it is disputed. But it's not before this court because it was disputed below, and it hasn't been brought before this court. That's fine. Thank you. Thank you, Mr. Corbat. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue. The court will stand a brief recess.